## ALLEN, *Appellant*, v. DRAKE *et al.*

DIVISION ONE.

1.  **Equity:** DEED: UNDUE INFLUENCE. In a suit by a wife to set aside a deed executed by her, on the ground of undue influence on the part of her deceased husband, the evidence showed that the husband had settled an ample estate on his wife, and, as her trustee, managed and kept a separate account of it; that he bought certain land and had the deed made to his wife; that he paid for the property himself, and personally assumed an incumbrance thereon; that the deed was delivered to him, but was never delivered to his wife; that he requested his wife to deed the property to a third person that the latter might transfer the legal title to him, and the wife made the conveyance as requested, and stated on examination separate and apart from her husband that she executed the same freely and without fear, compulsion or undue influence, and that the husband did not have the deed to the wife recorded until after her deed was filed of record. *Held*, that there was no evidence to show undue influence on the part of the husband.

2.  ———: ———: ———: PRESUMPTION. The presumption that the husband intended the property conveyed to his wife, as a provision for her, was repelled by the evidence that he had previously settled

on her an ample estate; that he was then acting as the trustee of her separate estate; that the deed to his wife was never delivered to her, and that he did not have it recorded until after her deed was filed.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Alex. Martin* and *Hitchcock, Madill & Finkelnburg* for appellant.

(1)  The plaintiff became seized to her own use of the property in controversy on the fifteenth day of November, 1881, by virtue of the deed of M. Dwight Collier to her, delivered at that date.  *First.*  The fact that one person pays the consideration of a conveyance, while the title is taken in the name of another, is permitted to raise a resulting use in the one paying the consideration, while the party in whose name the title appears is converted into a dry trustee for his use.  . We have no desire to question this well-settled doctrine of the law of trusts.  *Second.*  But this doctrine applies only as between strangers.  The trust which contradicts and overthrows the deed is raised only in favor of a stranger.  *Miller v. Davis,* 50 Mo. 572.  When the payment is made by the husband of the grantee it operates only to confirm the use in the wife.  *Darrier v. Darrier,* 58 Mo. 222; *Gilliland v. Gilliland,* 96 Mo. 522.  The law says that the husband intended his wife should have the property as a gift, and that he paid for it to effect that intent.  No actual evidence of a gift is required.  *Siebold v. Christman,* 75 Mo. 308.  *Third.* This intent is not a conclusive one.· It may be rebutted by competent parol evidence proving a contrary intent. The evidence, however, must be of the most definite and satisfactory character, because the effect of it is to raise

a resulting use in behalf of a person who is not a party to the deed to make a new deed in place of the old one. *Ringo v. Richardson*, 53 Mo. 396; *Rogers v. Rogers*, 87 Mo. 257; *Kennedy v. Kennedy*, 57 Mo. 76; *Forrester v. Moore*, 77 Mo. 651; *Shaw v. Shaw*, 86 Mo. 594. *Fourth.* If the declarations and acts of the husband do not clearly indicate some other purpose than a gift the presumption of the law must prevail, and his wife must have the property according to the plain language of the deed, where he pays for real estate, and has the title put in the name of the wife. (2) The conveyance to George L. Allen, and the conveyance of George L. Allen to Gerard B. Allen are void in equity. Mrs. Allen, being the owner of property of the value of $51,000, parts with this property by transfer to her husband for the nominal consideration of $1. The title thus acquired by him was presumptively acquired by exercise of the influence possessed by him over her as husband, and is avoidable at the option of the wife. *Boyd v. De La Montagnie*, 73 N. Y. 498; *Smyley v. Reese*, 53 Ala. 89; *Darlington's Appeal*, 86 Penn. 512; *Pennington v. Acker*, 1 George (Miss.) 161; *Allen v. Adams*, 7 George (Miss.) 640; *Dyer v. Williams*, 62 Miss. 302; *Stiles v. Stiles*, 14 Mich. 74. It has been held that, if the relation of guardian and ward exists, a voluntary gift or grant by the ward during its existence or on reaching his majority raises the presumption of undue influence, which avoids the grant or gift, and that the burden of rebutting this presumption is upon the guardian or those claiming an advantage by the gift or grant. *Garvin's Adm'r v. Williams*, 44 Mo. 465; *Garvin's Adm'r v. Williams*, 50 Mo. 206; *Bridwell v. Swank*, 84 Mo. 455. In all similar relations of confidence, trust or superior dominion this rule has been enforced. *Todd v. Grove*, 33 Md. 188; *Presley v. Kemb*, 16 S. C. 334; *Gibson v. Jeyes*, 6 Ves. 266;

*Caspari v. Church*, 82 Mo. 649; *McClure v. Lewis*, 72 Mo. 314. To make out a case of undue influence for the plaintiff it is only necessary to prove three things: *First*, the relation; *second*, the opportunity to exercise undue influence; *third*, the transfer by the wife of a valuable estate to the husband for nothing.

*Boyle, Adams & McKeighan* and *S. N. Holliday* for respondents.

(1). The Collier deed was never intended as a gift from Mr. Allen to Mrs. Allen. *First.* Whether or not it was so intended is a matter of pure intention (irrespective of any presumption to that effect), to be gathered from the facts and circumstances of the transaction and by the *res gestæ*. *Darrier v. Darrier*, 58 Mo. 222; *Creed v. Bank*, 1 Ohio St. 10; 1 Perry on Trusts [2 Ed.] secs. 146, 147, pp. 163–4; *Proseus v. McIntire*, 5 Barb. 432; *Butler v. Ins. Co.*, 14 Ala. 777; *Handy v. Johnson*, 5 Md. 463; *Harriman v. Stowe*, 57 Mo. 96. *Second.* Mr. Allen being relieved by contract of the obligation to make provision for Mrs. Allen, and there being no necessity for any such provision, by reason of the fact that Mrs. Allen was otherwise well provided for, the presumption of the deed being intended as a gift is thereby overcome. 1 Washburn on Real Property [4 Ed.] star p. 146; 2 Pomeroy on Equity Jurisprudence [Ed. 1882] sec. 1039, p. 611; Atherly on Marriage Settlements, 477. *Third.* The facts of the case, when analyzed, show that Mr. Allen's original intent was not to make a gift, but, as the agent of his wife, to make an investment for her, and to use her own resources in paying for the same. *Fourth.* The testimony of witness Turner, as to his "impression," is too vague and uncertain to be of any value in determining Mr. Allen's

intent. *Modrell v. Ridell*, 82 Mo. 36; *Kennedy v. Kennedy*, 57 Mo. 73; *Ringo v. Richardson*, 53 Mo. 385. *Fifth.* Plaintiff's argument on this point, analyzed and criticized. *Sanderlin v. Sanderlin*, 24 Ga. 587. (2) If the gift was originally contemplated by Mr. Allen (which, for reasons hereinbefore stated, we deny), it was never perfected; before the transaction was closed he determined otherwise. There was no consummation of the gift, as such, between Mr. and Mrs. Allen, by any delivery thereof to Mrs. Allen, or by any other acts equivalent to a delivery. 1 Parsons on Contracts [6 Ed.] star p. 234; 28 W. Va. 341; 5 Ves. 78, and cases cited under point 1; *Creed v. Bank, supra; Schick v. Grote*, 42 N. J. Eq. 352; *Dilts v. Stevenson*, 2 C. E. Green, 407; 1 Perry on Trusts [2 Ed.] secs. 146, 147; *Butler v. Ins. Co.*, 14 Ala. 777; *Handy v. Johnson*, 5 Md. 463; *Harriman v. Stowe*, 57 Mo. 96; *Phillips v. Phillips*, 50 Mo. 606; *Tobin v. Bass*, 85 Mo. 657; *Burke v. Adams*, 85 Mo. 504; *Wilcoxon v. Osborn*, 77 Mo. 629; *Fountaine v. Savings Inst.*, 57 Mo. 552. (3) There was no fraud or undue influence practiced by Mr. Allen upon his wife, in securing the execution of the quitclaim deed by her to George L. Allen. The facts of the case, when fully considered, show that no undue influence was used, and any possible technical presumption to that effect is overthrown by the facts and circumstances attending the conveyance, as disclosed by the evidence. *Clark v. Edwards*, 75 Mo. 89; *Webb v. Webb*, 87 Mo. 541; *Mays v. Pryce*, 95 Mo. 611–12; *Steffen v. Bauer*, 70 Mo. 401; *Sharp v. McPike*, 62 Mo. 300; *Belo v. Mayes*, 79 Mo. 67; *Wanell v. Kem*, 57 Mo. 478. (4) But there is no presumption of undue influence on the part of the husband arising out of the mere fact that the wife conveys property to him for a nominal consideration. *Sharp v. McPike, supra; Clark v. Edward's Adm'r, supra; Huguenin v. Basely,*

2 Leading Cases in Equity, p. 1215; 14 Ves. 273; *Orr v. Orr*, 8 Bush, 156; *Hardy v. Van Harlingen*, 7 Ohio St. 216; *Golding v. Golding*, 82 Ky. 51; *Stiles v. Stiles*, 14 Mich. 74; *McClure v. Lewis*, 73 Mo. 324. Plaintiff's cases on this point considered. (5) Plaintiff's equity is, at best, obscure, uncertain and doubtful; the very pith and substance of the transaction (notwithstanding technical presumptions) are honest, just and fair; no equity whatsoever is proved, and especially the particular fraud charged in the petition is not proved. Under such circumstances, or either of them, equitable relief cannot be granted to the plaintiff. 42 N. J. Eq., *supra; Forrester v. Scoville*, 51 Mo. 268; *Jackson v. Wood*, 88 Mo. 76; *Briant v. Jackson*, 99 Mo. 585, 596; *Webb v. Darby*, 94 Mo. 621; *Pomeroy v. Benton*, 57 Mo. 531; *Hart v. Railroad*, 65 Mo. 509. (6) Plaintiff failed to prove the case, made by her amended petition, and for this reason, also, her petition was properly dismissed. Plaintiff cannot sue on one cause of action and recover on a totally different one.

BRACE, J.—This is a proceeding in equity to set aside two deeds.

The material allegations of the petition are as follows:

"Your petitioner, Eugenia L. Allen, plaintiff, complains of," etc., and says: "That on the eleventh day of July, 1871, she was married to Gerard B. Allen, now deceased; that afterwards, by virtue of the deed of M. Dwight Collier to herself dated October 8, 1881, recorded in book 661, page 570, she became seized and possessed in her own right of the following described real estate in the city of St. Louis, situated in block 89, being the northwest corner of said block, containing twenty-six feet, nine inches front on the east line of Fourth street, by a depth along the south line of Vine street one hun-

dred and five feet, which property is now occupied by a tenant operating a dollar store, and which property in 1881 was of the value of $51,000, and is of that value or more at the present time; that a few weeks after the acquiring of said property as aforesaid her said husband requested of your petitioner that the title to said property be conveyed to and vested in himself, stating at the time that his object for such change of title was for the sole purpose of more conveniently selling and converting the same into other property and securities for the use and benefit of your petitioner. Your petitioner says that her said husband was a man of imperious will and positive convictions, and that he had such personal influence over your petitioner that his request aforesaid was equivalent to a command, which she felt it to be her duty to obey, without questioning the advisibility of the act required of her as aforesaid; that without counseling with anyone as to the probable effect or consequences of the act requested of her, but yielding implicit obedience to said request, she, on the twenty-fifth day of November, 1881, by her quitclaim deed of that date, transferred the legal title to said real estate to said George L. Allen, a son of her husband by a former marriage, for the nominal consideration of $1, but without any actual consideration in fact paid; and immediately afterwards said George L. Allen in carrying out the transmission of title requested of her as aforesaid, by his quitclaim deed of November 26, 1881, recorded in book 668, page 108, transferred the legal title to said real estate to his father, husband of your petitioner aforesaid, for a nominal consideration of $1.

"Your petitioner says that on the twenty-third day of July, 1887, said Gerard B. Allen departed this life without having sold, disposed of or converted said real estate into other property or securities to your peti-

tioner's use, and that at the time of his decease afore-said the legal title stood in his name.   And so it is as your petitioner avers that the legal title to her said real estate was procured from her without return or consideration of any kind whatever by virtue of the superior dominion and undue influence of her said husband, and that its acquisition and subsequent detention have been against equity and good conscience.

"Your petitioner further says that by his last will and testament which has been duly probated said Allen devised all of his real estate to the defendants, George A. Drake, Samuel N. Holliday and George L. Allen, as trustees, for the benefit of said Mary Frances Crane, George L. Allen and Grace Dickson, after payment of certain charges therein mentioned; that since the death of the said Gerard B. Allen said trustees, under color of their authority as such, have taken possession of the real estate aforesaid, and ignoring the rights of your petitioner to said property have inventoried it and treated it as a part of his estate of which he died seized to his own use, and pretend that the same by virtue of said will was vested in them as trustees for the uses mentioned in said will, free and discharged from all interest, estate or rights in favor of your petitioner.

"Wherefore your petitioner prays that the deed of said George L. Allen to Gerard B. Allen be set aside and held for naught; or that the devisees aforesaid of said Gerard B. Allen be adjudged to hold the title to and for your petitioner, and to convey the same to her by good and sufficient deed; that they also be required to account for the rents, issues and profits of said real estate, and for such other and further relief as may seem meet to the court, or the exigencies of the case may require."

The answer of the defendants was a general denial and the following special plea:   "For a further answer

herein said defendants say that the purchase price of the real estate alleged in said amended petition to have been deeded by M. Dwight Collier to the plaintiff was paid by the said Gerard B. Allen, and that the said plaintiff paid no part thereof; that at the request of said Gerard B. Allen, and for his temporary convenience and with no intent or purpose on his part of vesting in said plaintiff the beneficial interest therein, as a gift from him to her, the said deed conveying said real estate was executed and delivered to the said Gerard B. Allen with the name of the plaintiff inserted therein as grantee; that as part of the same transaction and for the purpose of vesting the absolute legal title to said real estate in the said Gerard B. Allen, and for no other purpose, the two subsequent deeds mentioned and described in plaintiff's amended petition were made and executed.

"Wherefore, having fully answered the said defendants pray to be hence discharged with their costs."

Issue was joined by reply.

It appears from the evidence that at the time of the marriage Gerard B. Allen was a widower, having four children living, by his former marriage, and possessed of a large estate admitted to be worth at that time more than a half million of dollars; that the plaintiff was the widow of Walter B. Carr deceased, also having four children living by her former marriage, and possessed of a personal estate of the value of about $35,000 or $40,000, and some real estate in the city of St. Louis; that before the marriage they entered into a marital contract in writing bearing date of July 10, 1871, whereby the whole of Mrs. Carr's estate was settled upon as her as her separate property, "the usufruct, rents and income during coverture only to be subject to the control" of Mr. Allen, and he agreed on its solemnization to deliver to her certain railroad bonds.

therein described, of the face value of $50,250, which settlement she accepted "in lieu of any dower or other claim" she might acquire by virtue of the marriage .in his estate. The bonds were delivered to Mrs. Allen's agent for her, after the marriage, in accordance with the agreement. They proved to be worth less than their face value, only realizing afterwards for her estate $33,500; so that Mrs. Allen's separate estate beside her realty, including what she received under the antenuptial contract, may be put down in round. numbers at, say, $70,000.

Mr. and Mrs. Allen lived happily together from the day of their marriage until the day of his death, a period of sixteen years and a few days. During all that time he continued in the active management of his own affairs and of her separate fortune, keeping an account of his dealings with the separate estate, and managing it for her benefit according to his best judgment, changing the securities, making investments and re-investments, in accordance with his own best judgment for its interest.

The evidence discloses the fact that Mr. Allen was a man of sound judgment, strong convictions, great will power, honest, fair and just in all his dealings, possessed with excellent business qualifications, and earnest, firm and energetic in all business affairs, for which he had eminent talent; and that his wife (the plaintiff) was an intelligent, amiable and refined lady, of strong intellect, who at the head of their household dispensed an elegant hospitality fitting their station in life. They appear in this record a model husband and wife, in whose married life not a single discordant note is heard. While she reigned queen of the household, he commanded on the field of business. Thus they lived. And when Mr. Allen died he left an estate in his own right of the value of more than a million and a half

dollars; and had so managed the separate estate of his wife, that, in 1881, said estate in realty had been increased in interest and value, and the personalty increased in value to about $113,000. The value, at his death, does not appear. He died testate. There were no children born of the marriage with plaintiff.

By his last will, admitted to probate August 22, 1887, he made the following provisions for the benefit of his wife:

"Inasmuch as my dear wife, Eugenia, by an antenuptial contract entered into with me, retained the ownership of all the property to her belonging before our marriage, and in which said contract I conveyed to her, for her sole use and benefit, in consideration of her relinquishment of dower in and to every portion of my estate which she might otherwise have by said marriage, certain property, the revenues from which, in addition to the revenues from her own property, will be ample to enable her to live independently, therefore, I do not deem it necessary to make any further provision for her support; yet in kindly and affectionate remembrance of her affection and faithfulness to me, and in evidence of my appreciation of the additional happiness my married life has given me, I desire to make some additional provisions for her comfort.

"Therefore, in order to carry out these my desires and purposes, I do devise and bequeath as follows: that is to say:

"*First.* I give and bequeath to my beloved wife, Eugenia, to be hers in full absolute property, my household furniture, carriages, horses and all other articles belonging to my person or household, except my library books with their three cases now in my library and secretary, the wines and liquors in my wine cellar and the several complimentary presents of silver,

gold and pictures which my kind friends have given me from time to time. The above bequests to my dear wife are only made here out of abundance of caution, as it is my intention to give and deliver to her before my death all the articles bequeathed to her above, in which case my executors shall not inventory the same."

In the second article, he bequeaths a large personal estate to his son, George L. Allen, subject to the condition that he shall pay the several legacies, without interest, which here follow, to-wit:

"*First.* To W. Childs Carr, N. Paschall Carr, Martha Eliza Carr and Walter B. Carr, the children of my beloved wife, Eugenia, the sum of $5,000 each; this payment to be made to them respectively or to such trustee for them or either of them as my wife, Eugenia, may determine, with such restrictions and limitations in the trust as she directs."

The third article of his will is as follows:

"*Third.* I give my beloved wife, Eugenia, the right to occupy my residence on the northwest corner of Leffingwell avenue and Chestnut street as her homestead for and during her natural life, and if she does not choose to reside therein the possession shall be turned over to my son George L. Allen as soon as she moves therefrom. And in case my wife does not choose to occupy my residence after my death I hereby authorize her to occupy as her residence for and during her natural life either of my three dwelling-houses, numbered respectively 2719, 2823 or 2825 Chestnut street, and in case she occupies either of said houses or my said residence my trustees shall put the house so occupied by her in a thorough state of repair, when she takes charge of the same, and shall otherwise pay all insurance and taxes on the same. If my wife should prefer to occupy her own house, number 2735, Chestnut street, as a residence, then my trustees shall put

that in a thorough state of repair before she moves into the same.''

In the seventh article of his will he devised and bequeathed all the rest and residue of his estate to trustees, making the payment of certain annuities therein provided for charges upon real estate. The first of those annuities is as follows:

"*A.* To my beloved wife, Eugenia, the sum of seven thousand dollars annually ($7,000), in quarterly payments, during her natural life.''

We now come to the particular transaction which is made the basis of this suit. The deed from Collier to Mrs. Allen dated October 8, 1881, was executed by Mr. Collier and wife in the city of Paris in France, and acknowledged before the consul general of the United States on the twenty-seventh day of October, 1881. The negotiation for the purchase of the property was between Mr. Allen and Charles H. Turner, the agent of Collier at St. Louis for the sale of the property, and was concluded at the date of the deed on the terms therein stated, the deed prepared in the office of Mr. Turner, forwarded to Paris, executed and returned by mail to Mr. Collier's attorney, Mr. Hitchcock.

Mr. Turner took the deed to Mr. Allen on the fifteenth day of November, 1881, and, upon the payment by him of the purchase money, on that day delivered the deed to him. At that time there was an incumbrance upon the property of $20,000, by way of a deed of trust thereupon, to secure the payment of a note of Collier's for that amount. The purchase money was paid by Mr. Allen, by his personal check on the Boatman's Bank for $31,000, afterwards duly paid on presentation, and by his assuming (and afterwards paying off) the incumbrance aforesaid. His assumption of the debt secured by the deed of trust was in the form of a letter to Mr. Hitchcock, attorney for

Collier, and for him, the adviser of Mr. Turner in the transaction. The letter, which was dictated by Mr. Hitchcock and signed by Mr. Allen, is as follows:

"St. Louis, November 15, 1881.

"*Henry Hitchcock, Attorney in fact for M. Dwight Collier, St. Louis, Mo.*

"Dear Sir:—Having this day accepted, in behalf of my wife, Eugenia L. Allen, the deed of conveyance in fee executed to her by M. Dwight Collier and wife, and by you delivered for them this day, which deed is for the store and property known as number 418, North Fourth street, at the southeast corner of Fourth and Vine streets, in St. Louis, Missouri, and the payment of $20,000 of the purchase money of said property, which was agreed to be paid in cash, having been delayed at the request of the said Eugenia L. Allen, through me, until the thirteenth of December next, I hereby undertake and agree with M. Dwight Collier, in consideration of such delay of payment, to pay and satisfy at maturity thereof a certain note made by M. Dwight Collier for $20,000, maturing December 13, 1881, which is secured by deed of trust on said property, and also to pay six months' interest on said note, maturing on the same day, the interest accrued thereon since June 13, 1881, up to this date, having been credited to the said Eugenia L. Allen on account of said purchase money. And, for the same consideration, I further undertake to, and hereby do, guarantee the said M. Dwight Collier against the covenants of warranty, and against incumbrances in said deed contained, to the extent of the said incumbrance of $20,000 and interest thereon, so assumed and to be satisfied by me.

"Yours truly,

"Gerard B. Allen."

Afterwards, by the quitclaim deed recited in the petition, dated November 25, 1881, in the handwriting

of Mr. Allen, signed by Mr. and Mrs. Allen, and duly acknowledged by them on the second day of December, 1881, before a notary public, and filed for record on the same day at one o'clock P. M., Mr. and Mrs. Allen conveyed the premises to the said George L. Allen; and the said George L. Allen and wife, by the other quitclaim deed recited in the petition, dated November 26, 1881, also in the handwriting of Gerard B. Allen, duly executed and acknowledged by the said George L. Allen and his wife, on the second day of December, 1881, and filed for record on the same day at 10:12 o'clock P. M., conveyed the premises to Gerard B. Allen.

The deed from Collier to Mrs. Allen was also filed for record on the second of December, at 1:12 o'clock P. M.

At the death of Mr. Allen these deeds, with his other papers, came into the hands of the defendants, his legal representatives under the will, and they proceeded to inventory the premises as property of his estate, and for it took possession of the premises; and on the thirtieth of July, 1888, this suit was brought. It was tried at the June term, 1889, of the circuit court, on an amended petition, filed at the December term, 1888. The issues were found for the defendants, and plaintiff's bill dismissed. From the judgment rendered in defendants' favor, the plaintiff appeals.

I. Counsel for plaintiff concede that there is no evidence in the case tending to prove that Mrs. Allen was induced to execute the quitclaim deed by the representation alleged in the petition to have been made by Mr. Allen to her, that it was for the sole purpose of more conveniently selling and converting the same into other property " for her use and benefit;" but contend that the cause of action set out in the petition is not for a breach of trust in failing to carry out that purpose, but that the allegation of that statement by Mr.

Allen was mere inducement leading up to the cause of action really set up in the petition; which is, that she was induced to execute that deed, without any consideration, by the undue influence exercised by her husband over her at that time, constraining her so to do, and not of her own free will. And for the purposes of this opinion, without stopping to critically analyze the petition, the case may be disposed of on that construction of its meaning.

II.  In support of the cause of action thus stated (it being conceded that Mrs. Allen's conveyance to George Allen was made simply for the purpose of enabling him to transfer the legal title to Gerard B. Allen), it is contended that plaintiff makes out a *prima facie* case, by showing the existence of the relation of husband and wife between the parties, "the opportunity to exercise undue influence, and the transfer by the wife of a valuable estate to the husband for nothing," with the important qualification that the estate thus transferred is her property in the eye of a court of equity, property in which she has the beneficial interest and not a mere naked legal seizin, the beneficial interest being in her husband; this proposition may be conceded.

A court of equity is disposed to impute the conveyance to the influence of the husband growing out of the relation rather than to love and affection. This, of course, is a mere presumption, calling for an explanation of the real facts of the transaction. And if, when made, it appears that the transaction is entirely consistent with honesty and good faith, and no advantage has been taken of the wife, then this presumption is rebutted, and her deed excuted in due form and acknowledged in the manner required by law, in acknowledging which she declared "upon an

examination, separate and apart from her husband, that she executed the same freely and without fear, compulsion or undue influence," must stand, unless it also further appears *in fact* that she did not execute the same of her own free will, but was constrained so to do by the will of her husband.

With this preliminary statement of the main principle, which must be decisive of the case, we come to a consideration of the facts of the transaction.

III. By the marital agreement, all Mrs. Allen's property, present and future, however acquired, was settled on her to her separate use, over which she had absolute control as a *feme sole*.

For more than ten years prior to October, 1881, Mr. Allen had been acting, by her consent and evidently to her satisfaction, as her agent in the management of that estate. He never commingled that estate with his own; but kept accurate accounts with it, as he would with that of a stranger intrusted to his management. These accounts were offered in evidence by the defendants, but excluded as not relevant to the issue. It is not even insinuated, however, that a dollar of that separate estate ever went into the transaction. Nor is it questioned in this case, that he faithfully and intelligently discharged this trust to the day of his death. It does appear, however, that when necessary or convenient he would at times advance funds for the use of the separate estate out of his own moneys, and afterwards reimburse himself from those of the separate estate, and doubtless the reverse operation may have, at times, taken place. In this state of affairs, about the first of October, 1881, he entered into negotiations with Mr. Turner, the agent of Collier, for the purchase of the premises in controversy. On or about the eighth, they agreed upon terms and he directed that the deed be drawn in the name of his

wife. It is, of course, impossible to say positively what Mr. Allen's intentions were then, in regard to this property; but in the light of the marriage contract, the way in which the wife's separate estate secured to her thereby had been managed up to that time, its then condition, the conduct of Mr. Allen and his wife with reference to the property afterwards, assisted by the last lingering ray shed upon that intention by his last will and testament, the most reasonable conclusion that can be drawn is, that he then intended to invest some part of his wife's separate estate in the premises. The only suggestion to militate against this conclusion is contained in the evidence of Mr. Turner, who testified that in the course of the negotiation he had several conversations with Mr. Allen, and got the impression that Mr. Allen intended to give this property to his wife. He could not give the language used by Mr. Allen in any of these conversations, nor the substance of it; and counsel, only by a most skilful and protracted cross-examination, and an ingenious play upon the meaning of the word "purport" let slip by the witness in the course of the examination, got his impression before the court as evidence. It had no probative force upon the question of Mr. Allen's intentions, evidently made no "impression" on the trial court, and makes none upon us.

When the deed of Collier was returned and ready for delivery, and $31,000 of the purchase money paid by Mr. Allen, it became necessary to make some arrangement for the removal of the incumbrance of $20,000, and the arrangement made is evidenced by Mr. Allen's letter to Mr. Hitchcock.

In the argument this letter is dwelt upon by counsel on each side as supporting their theory of what Mr. Allen's intentions were at that time; but we do not see that it sheds any light upon the subject. The mind of

the dictator of the letter and of the signer was evidently upon the single subject of embracing within its terms a provision for the discharge of the incumbrance, and its terms are made simply to conform to the deed then about to be delivered. The trade having been thus consummated, the deed was delivered to Mr. Allen on the fifteenth of November. And we are here met with the presumption that, although Mr. Allen paid all the purchase price, yet the grantee in the deed being his wife no resulting trust inures to his benefit from that fact, the presumption under such circumstances being that he intended a provision for her by way of advancement. This presumption arises from the ordinary duty of the husband to make provision for the support of his wife, but is effectually rebutted in this case by the fact that he had already made provision for her by settling upon her an ample separate estate; that he was then acting as her agent for that estate, and by the fact that he never delivered the deed to his wife, but took care that even a constructive delivery by filing for record should not obtain, until after her deed had been filed for record.

So that there is really no substantial evidence in the case that he ever intended to make his wife a present of this property. It is simply evident that at some time between the eighth of October and the twenty-fifth of November he changed his original intention of making an investment of the funds of her separate estate in this property, and that the condition of the affair was then, if not before, communicated to her, and she consented to and did execute the quitclaim deed, by which the legal title was vested in him in whom was already all the beneficial interest in the premises. That she did so consent is evidenced, not only by her declaration to the officer before whom she acknowledged it apart from her husband, but by the allegations con-

tained in the original petition, filed in this cause and again in effect affirmed by the amended petition upon which the case was tried; which affirmation gives rise to the double phase of that petition, which made it necessary for counsel to construct therefrom the theory of undue influence upon which the case was tried.

There is no evidence whatever that Mr. Allen *in fact* exercised any undue influence, or constrained his wife in any manner, to the execution of the deed which is sought to be set aside or tending to prove she did not execute the same *freely*. There is no equity in plaintiff's case, and the court could not do otherwise than dismiss the bill. The judgment is affirmed. All concur except BARCLAY, J., absent.